**ORDERED in the Southern District of Florida on** 06/30/08



Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VISION DEVELOPMENT GROUP OF         Case No. 07-17778-BKC-RBR
BROWARD COUNTY, LLC                 Chapter 11

    Debtor.                         Jointly Administered
_____/

**MEMORANDUM OPINION IN SUPPORT OF COURT'S ORDER APPOINTING EXAMINER**

This matter came before the Court for hearing upon the Emergency Motion to Appoint Examiner and Continue Confirmation Hearing Until Completion of Examiner's Report [D.E. 401] (the "Motion"), filed by creditors Chelsey Funding, LLC ("Chelsey") and TMG Sunrise, LLC ("TMG" and, together with Chelsey, the "Mezzanine Lenders"). The Court held a hearing on the Motion on Friday, May 30, 2008,[1] at which respective counsel for Vision Development Group of Broward County, LLC ("Vision" or the "Debtor") and its managing member Isadore Cohen ("Cohen" and, together with Vision, the "Debtors"), the Mezzanine Lenders and CORUS Bank, N.A. ("Corus") appeared and

---

[1] By separate order [D.E. 490], the Court granted the Motion in part with respect to the Mezzanine Lenders' request to continue the plan confirmation hearing – by continuing the hearing to August 18, 2008.

the Court heard and considered arguments presented by counsel for the Debtors and Mezzanine Lenders, which argument had been fully briefed and which briefs had been reviewed and considered by the Court prior to the hearing.

The Court has reviewed and considered the Motion and all exhibits thereto, including the claims filed by the Mezzanine Lenders in the Debtor's bankruptcy case (claims no. 18 and 19) and the transcript of the deposition of Isadore Cohen; the written response to the Motion filed by the Debtors [D.E. 471]; and the relevant record in the Debtor's bankruptcy case. The Court has heard and considered the arguments and representations of counsel at the hearing and is otherwise fully advised. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

## BACKGROUND

### General Background

The Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on September 20, 2007 (the "Petition Date"), and their bankruptcy cases are being jointly administered for procedural purposes only.

The Debtors filed their Second Amended Joint Chapter 11 Plan of Reorganization (the "Plan") on March 28, 2008. The hearing on confirmation of the Plan, originally scheduled for May 30, 2008, has been continued to August 18, 2008, while the Court considers the instant Motion and other disputes between the Debtors and Mezzanine Lenders which have been brought before the Court, including adversary proceeding no.

08-01295-BKC-RBR-A (the "Adversary Proceeding"), which the Court deems necessary and appropriate to resolve prior to the confirmation hearing.

On April 29, 2008, the Mezzanine Lenders commenced a deposition of Isadore Cohen, individually and as the corporate representative of Vision, pursuant to Federal Rules of Bankruptcy Procedure 2004 and 7030 (the "Cohen Deposition" or "Deposition"). In advance of the Cohen Deposition, the Debtors produced a number of documents to the Mezzanine Lenders in respect of which Cohen was questioned at the Deposition. A copy of the transcript of the Cohen deposition is attached to the Motion as Exhibit D.

### Summary of Allegations

The facts and circumstances alleged by the Mezzanine Lenders in support of their request for an examiner (Motion, ¶¶ 22-37) are summarized as follows.[2] In connection with the Debtor's sale of condominium units to third-party purchasers, the Debtor has entered into certain agreements, characterized as "marketing" or "development" agreements with certain entities separate from the real estate broker, which call for payments at closing of substantial fees in addition to the standard brokerage commission. In some cases, these fees plus the brokerage commissions have amounted to approximately 35% to 40% of the sale price for a particular unit.

Though recognizing that developers may need to offer incentives to buyers and brokers considering the current state of the Florida condominium market, the Court notes

---

[2] In this section of the memorandum opinion, the Court does not adopt any of the Mezzanine Lenders' allegations as findings of fact; the Court is merely summarizing the substance of those allegations for purposes of its analysis of the Mezzanine Lenders' request for an examiner under 11 U.S.C. § 1104(c), discussed later in this opinion.

3

that the alleged fees proposed to these entities, over and above the traditional brokerage fees, appear to be unusually high.

It also appears that many of the so-called marketing and development fees payable at closing are earned when the so-called marketing and development companies procure buyers who close on condominium sales with the Debtor. As such, these companies appear to be performing duplicative services. The standard form "marketing" and "development" agreements used by the Debtor contain no description whatsoever of any marketing, consulting or other services performed by these companies.

It is also alleged that many of these companies are not licensed as real estate brokers or sales associates with the State of Florida. As such, the fees payable to these companies may violate Florida Statute § 475.41 which prohibits payment of fees, commissions or other compensation to brokers not licensed with the State of Florida. *See* Fla. Stat. § 475.41 (providing "[n]o contract for a commission or compensation for any act or service enumerated in s. 475.01(3) is valid unless the broker or sales associate has complied with this chapter in regard to issuance and renewal of the license at the time the act or service was performed.").

## ANALYSIS

Section 1104(c) of the Bankruptcy Code provides that:

> (c) If the court does not order the appointment of the trustee under this section, then at any time before the confirmation of the plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court <u>shall</u> order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if –

>> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c) (emphasis added).

The Mezzanine Lenders have raised serious allegations of possible fraud, dishonesty, incompetence, misconduct, mismanagement, and irregularity of the Debtor's affairs, specifically with respect to its payment of fees and commissions to parties operating under the guise of marketing and consulting agreements, as described in detail in the Motion. Therefore, the Court finds that the first requirement for mandatory appointment of an examiner under section 1104(c)(2) has been met.

The Mezzanine Lenders' collective claims against Vision (claims no. 18 and 19) total $10.5 million plus interest and reflect unsecured debts that are fixed and liquidated under the Mezzanine Notes. The Debtor has admitted that the Mezzanine Lenders actually funded the $10.5 million amount of the mezzanine loans, and that those funds were used by the Debtor towards the acquisition of the apartment complex it proposed to convert to condominiums and/or working capital.

Though the Debtor has objected to the Mezzanine Lenders' claims, by written objections [D.E. 308, 309] and its Complaint filed in the Adversary Proceeding, on the grounds that the interest rate charged under the mezzanine notes is usurious and that the claims should be recharacterized or subordinated, these objections only render the claims "disputed" – not unfixed or unliquidated such that section 1104(c)(2) would be inapplicable. Congress chose not to use the term "undisputed" in the mandatory

examiner statute, which the Court presumes was an intentional omission since other provisions of the Bankruptcy Code employ that terms in conjunction with the terms "fixed" and "liquidated." *See, e.g.,* 11 U.S.C. § 303(b)(1); Fed R. Bankr. P. 3003(b)(1), 3003(c)(2).

The Court also finds and concludes that neither Mezzanine Lender qualifies as an "insider" of the Debtor under any of the definitions contained in 11 U.S.C. § 101(31), and the Debtor has not challenged their characterization as non-insiders.

Accordingly, the Court finds that the Debtor's fixed and liquidated unsecured debts owed to the Mezzanine Lenders alone greatly exceed the $5 million threshold for mandatory appointment of an examiner under section 1104(c)(2).

For the reasons set forth above, the Court holds that appointment of an examiner in this case is mandatory under section 1104(c)(2).

The Debtor argues that the Mezzanine Lenders have waived their right to seek appointment of an examiner by waiting until shortly before the plan confirmation hearing to file the Motion. Though the Court recognizes that certain some bankruptcy courts, in decisions cited by the Debtor in its response, have declined to appoint examiners due to the late stage of the request, the Court respectfully declines to follow those decisions as plainly inconsistent with the provision of section 1104(c)(2) that a request for, and appointment of, an examiner may be made "**at any time before the confirmation of the plan**."

Having held that the appointment of an examiner is mandatory in this case under section 1104(c)(2), and that the Mezzanine Lenders' right to request such appointment at

6

any time before confirmation has not been waived, the Court must now determine the scope of the examiner's role considering the circumstances of this case.

The Court finds that the allegations raised by the Mezzanine Lenders regarding the Debtor's payment of unusually large fees and commissions to unlicensed real estate brokers warrants further investigation by the examiner.

The scope of the examiner's duties shall be as set forth herein. Specifically, the examiner shall review all pending purchase and sale contracts previously approved in this Court's Sale Orders, in order to investigate the agreements attached thereto. To this end, the examiner shall be charged with reporting to the Court within three weeks of the entry of this Order a report setting forth the following: the amount to be paid for each agreement associated with the specific purchase and sale contract; who the payment is being made to; whether the company or person to be paid pursuant the agreement is an authorized real estate agent; and whether the examiner recommends this Court hold a further hearing on the approval of the agreements attached to the pending purchase and sale contracts.

The examiner shall not be allowed to retain any professionals without further order of this Court.

As a prerequisite to the examiner performing any work under this Order, the Mezzanine Lenders shall post a $50,000 bond with the Court registry. The Court shall determine at a later hearing whether the $50,000 bond shall be used to pay for the examiner's fees and costs.

## **CONCLUSION**

For all the foregoing reasons, the Court concludes that the appointment of an examiner, for the reasons and purposes described herein, is mandatory and appropriate in this case and, accordingly, the Motion should be granted. Pursuant to Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58, the Court will enter a separate Order granting the Motion in accordance with the foregoing findings of fact and conclusions of law.